778 F.2d 543
 FARMERS STATE BANK OF YUMA, Plaintiff-Appellant,
v.
Harold HARMON, Individually and as Trustee for the Harold
Harmon Family Trust, Defendants-Appellees,
Ricky A. Harmon and Randy L. Harmon, Intervenors-Appellees.
 No. 84-1156.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 26, 1985.
 
 Dana F. Strout, Denver, Colo. and Steven E. Shinn, Yuma, Colo., for plaintiff-appellant.
 Gary Scritsmier of Kelley, Scritsmier, Moore & Byrne, P.C., North Platte, Neb., for defendants-appellees.
 John N. Dahle of Grant, McHendrie, Haines and Crouse, Denver, Colo., for intervenors-appellees.
 Before McKAY and SETH, Circuit Judges, and BRETT, District Judge.*
 McKAY, Circuit Judge.
 
 
 1
 Farmers State Bank of Yuma, Colorado, appeals from the trial court's order granting summary judgment in favor of Ricky Harmon and Randy Harmon, two of three co-trustees of the Harold Harmon Family Trust. The trial court based its decision on the ground that Harold Harmon, the third co-trustee of the family trust, did not have the authority to bind the trust when he executed certain documents with the Bank. The issue on appeal is whether there exist genuine issues of material fact that make improper the trial court's grant of summary judgment.
 
 
 2
 In February of 1979, Harold Harmon and his wife created two trusts. Mr. Harmon was the sole trustee of the first trust, entitled "Harold Harmon Trust". Mr. Harmon and two of his minor sons, Ricky Harmon and Randy Harmon, were appointed co-trustees of a second trust created the same day, entitled "Harold Harmon Family Trust." All three acknowledged their acceptance of trusteeship by signing the trust instruments.
 
 
 3
 Mr. Harmon and two other individuals were the principal shareholders of a corporation known as Alfalfa Products, Inc. On July 29, 1980, Alfalfa Products, Inc. borrowed a large sum of money from the Bank. The Bank required Mr. Harmon to sign a guarantee agreement, pursuant to which Mr. Harmon guaranteed to repay 35 percent of Alfalfa Products, Inc.'s borrowings in the event the corporation defaulted. Mr. Harmon signed the guarantee agreement as "Harold Harmon" and as "Harold Harmon, Trustee" under a typed legend indicating that he was signing on behalf of the Harold Harmon Family Trust.
 
 
 4
 On the same day, Mr. Harmon himself borrowed money from the Bank and executed a promissory note. Mr. Harmon signed the promissory note "Harold Harmon" and "Harold Harmon, Trustee." Thereafter, from time to time, Mr. Harmon signed renewal notes covering his personal borrowings, the last renewal note being dated December 30, 1981. That note bore the signatures "Harold Harmon" and "Harold Harmon, Trustee."
 
 
 5
 Neither Ricky nor Randy Harmon, the remaining co-trustees of the family trust, knew their father had signed the loan guarantee or the promissory notes on behalf of the family trust. Ricky Harmon had reached his majority before Mr. Harmon entered into any of these transactions with the Bank.
 
 
 6
 Mr. Harmon failed to make payments pursuant to the guarantee agreement and the promissory note. The Bank sued Mr. Harmon individually and as trustee of the Harold Harmon Family Trust. Ricky and Randy Harmon intervened and moved for summary judgment, arguing that Mr. Harmon had exceeded his authority to bind the family trust. The trial court granted the intervenor's motion and dismissed the Bank's claims against the trust.
 
 
 7
 The Bank argues that summary judgment was improper because genuine issues of fact existed as to: (1) whether Ricky and Randy Harmon lacked capacity to accept their positions as co-trustees; (2) whether Ricky and Randy Harmon accepted their positions as co-trustees; (3) whether the Harold Harmon Family Trust was valid; and (4) whether the Bank had actual knowledge that Mr. Harmon lacked the authority to bind the family trust.
 
 
 8
 The parties agree that Nebraska law controls the issues in this case.
 
 I. Capacity to Accept Trusteeship
 
 9
 The Bank asserts that summary judgment was improper because a question of fact exists as to whether Ricky and Randy Harmon lacked the legal capacity, because of their minor status, to accept their positions as co-trustees, and whether they accepted those positions. The Bank argues that if Ricky and Randy were without capacity to serve as co-trustees, then, under the terms of the trust, Mr. Harmon succeeded to their powers and had the authority to bind the trust.
 
 
 10
 Whether Ricky and Randy could accept trusteeship raises a question of law, not a question of fact. It is undisputed that when the family trust was executed, Randy was thirteen years old and Ricky was seventeen years old. Record, vol. 3, at 295.
 
 
 11
 The leading authorities agree that a minor has the capacity to take and hold property in trust. Restatement (Second) of Trusts Sec. 91 (1977); G. Bogert, The Law of Trusts and Trustees Sec. 127 (2d ed. rev. 1977); Scott on Trusts Sec. 91 (3rd ed. 1967). On the other hand, these authorities reason that a minor lacks the capacity to administer a trust because his contracts and conveyances may be voidable by him when he reaches his majority. See, e.g., Bogert, supra; Scott on Trusts, supra. There is authority to the contrary, however. See, e.g., Levin v. Ritz, 17 Misc. 737, 743-44, 41 N.Y.Supp. 405 (1895).
 
 
 12
 The Harmon brothers had the capacity to accept their trusteeship at the time of its creation as a matter of law, notwithstanding their minority. There is no provision in the Nebraska Trustees' Powers Act nor any other Nebraska statute reflecting a legislative policy to disqualify minors from holding title to property in their own name, either personally or as trustees. The only challenge to their acceptance is based on the notion that they lacked legal capacity to accept on the day the trust was created and signed by the brothers. There is no question that they signed the last page of the Harold Harmon Family Trust under the recital "do hereby accept the trusteeship thereunder and agree to be bound by the terms and conditions thereof." Record, vol. 1, at 87. Even if any doubt remained under Nebraska law as to the minors' capacity to accept their trusteeship when executed, the Bank stipulated in the pretrial order that "at all relevant times, intervenors, in addition to Harold Harmon, were co-trustees of the Harold Harmon Family Trust...." Record, vol. 3, at 350. This stipulation is binding on the Bank. Morelock v. N.C.R. Corp., 586 F.2d 1096, 1107 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).
 
 
 13
 We do not reach the issue of whether minors are capable of administering trusts because at the time Mr. Harmon signed the guarantee agreement and the note on July 29, 1980, Ricky Harmon was nineteen years old and had reached his majority under Nebraska Law. See Neb.Rev.Stat. Sec. 30-2209(26) (1979). Thus, on the dates of the transactions which are the subject of the Bank's claims, at least two, if not three, co-trustees of the Harold Harmon Family Trust had the authority to administer the trust. In Nebraska, where there are two trustees to a trust, the powers conferred upon them can properly be exercised only by both trustees, unless otherwise provided by the terms of the trust. Neb.Rev.Stat. Sec. 30-2823(2) (1984 Cum.Supp.). The trust does not so provide.
 
 II. Validity of the Trust
 
 14
 The Bank has attempted to attack the trust as being invalid--in effect, nonexistent. The thrust of its argument is that the trust was a sham because of the alleged total control of Ricky and Randy by their father. The bank makes this argument notwithstanding it's pretrial stipulation that: "At all relevant times, the Harold Harmon Family Trust and the Harold Harmon Trust were in full force and effect, and had not been amended." Record, vol. 3, at 350.
 
 
 15
 We choose not to participate in the Bank's game of semantics. The unambiguous language speaks for itself. The Bank has admitted the validity of the trust and is bound by its stipulation. Morelock v. N.C.R. Corp., 586 F.2d 1096, 1107 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).
 
 
 16
 Additionally, the manner of relief sought by the Bank is consistent with the Bank's admission that the Harold Harmon Family Trust is valid. Rather than seeking a judgment invalidating the family trust, the Bank sought a judgment against Mr. Harmon "as trustee of the Harold Harmon Family Trust." Plaintiff has never amended its complaint so as to pursue an alternative remedy. Both the Bank's complaint and the pretrial stipulations establish that no question of fact exists regarding the validity of the Harold Harmon Family Trust.
 
 III. Actual Knowledge
 
 17
 The Bank claims that a question of fact exists as to whether it had "actual knowledge" of Mr. Harmon's lack of authority to bind the family trust. Lack of such "actual knowledge," it argues, would give it protection under Neb.Rev.Stat. Sec. 30-2824 (1984 Cum.Supp.), which provides:
 
 
 18
 With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust powers and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a third person, without actual knowledge that the trustee is exceeding the trustee's powers or properly exercising them, is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers such trustee purports to exercise....
 
 
 19
 (Emphasis added.)
 
 
 20
 Specifically, the Bank argues that a question of fact exists as to whether Mr. Starnes, the Bank's president, had in his possession and reviewed the Harold Harmon Family Trust before July 29, 1980, the date Mr. Harmon signed the guarantee agreement and the promissory note. However, the trial court "found, concluded and held" that Mr. Starnes had actual knowledge--or certainly notice equivalent to actual knowledge--of Mr. Harmon's lack of authority to bind the trust. Record, vol. 4, at 6. The record leaves nothing for a fact finder to resolve on this issue.
 
 
 21
 Mr. Harmon testified that Mr. Starnes had in his possession and reviewed both the Harold Harmon Family Trust and the Harold Harmon Trust before July 29, 1980. Mr. Starnes never directly rebutted this testimony. At one point he equivocated as to whether the time was before or after July 29, 1980, but he gave no positive testimony to that effect. Other evidence unequivocally demonstrates that Mr. Starnes had both trusts in his possession and read them before July 29, 1980. Mr. Starnes testified that: (1) on July 14, 1980, he requested that Mr. Harmon furnish him with copies of both trusts; (2) within a matter of days of his request, he received both trusts; (3) he reviewed the trusts, including the provisions about trust purposes, beneficiaries, trustees, and trust names; (4) he then selected the name "Harold Harmon Family Trust" to be typed on the Alfalfa Products, Inc. loan agreement above the line where the signature "Harold Harmon, Trustee" appears; (5) he prepared the guarantee agreement before July 29, 1980; and (6) he concluded from reading the Harold Harmon Family Trust that Mr. Harmon had the authority to sign the guarantee on behalf of the trust. There is no affirmative evidence in the record to contradict the clear and unequivocal testimony of Mr. Starnes that he had in his possession and reviewed the trusts prior to July 29, 1980.
 
 
 22
 The Bank further asserts that even if Mr. Starnes read the family trust before July 29, 1980, he did not have a correct subjective understanding that Mr. Harmon did not have authority to bind the family trust and, therefore, did not have "actual knowledge" to that effect. No Nebraska case interprets "actual knowledge" as used in Neb.Rev.Stat. Sec. 30-2824 (1984 Cum.Supp.). However, we do not believe that the Nebraska Supreme Court would require a "correct subjective understanding" under the statute. So long as the charged party has actual knowledge of what the trust says, he is charged with actual knowledge of what it means. The trust is pregnant with the fact that Mr. Harmon and his two sons were co-trustees of the trust. It would be impossible to glance at even the first page without knowing that fact. Under all the evidence in the record, there is no room left for a factual dispute about Mr. Starnes' actual knowledge regarding the number and identity of the co-trustees.
 
 
 23
 The Bank cannot gain protection under Neb.Rev.Stat. Sec. 30-2824 simply by asserting that it did not correctly understand the facts or the information it acquired. Merely stating that an issue exists does not prevent the granting of summary judgment. Accordingly, the Bank's insistence that it never had "actual knowledge" as that term is used in Neb.Rev.Stat. Sec. 30-2824 cannot defeat a motion for summary judgment.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable Thomas R. Brett, United States District Judge for the District of Oklahoma, sitting by designation